# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                              Crim. No. 98-98 LH

OMAR COMBS, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO SUPPRESS

THIS MATTER came on for consideration of Defendant Combs' Motion to Suppress

Physical Evidence and Statements *(Doc. 53)*.  An evidentiary hearing was held in Las Cruces on

June 8, 1998.  I found that the initial stop of the vehicle in which Combs was a passenger was not

supported by a reasonable suspicion of unlawful activity.  I requested supplemental briefing,

however, on whether the "inevitable discovery" exception to the exclusionary rule could justify

admission of evidence derived from the stop.  Having reviewed the testimony and evidence

received at the hearing, the memoranda submitted and the relevant authorities, I conclude that the

Government failed to meet its burden for the inevitable discovery doctrine to apply.

Border Patrol Agent James Hearne testified that Defendant Combs was a passenger in a

bluish or teal/green vehicle that entered the checkpoint located on U.S. Highway 70/82 west of

Alamogordo at 7:00 on the morning of January 31, 1998.  Hearne noted that the two occupants

were black Americans and that the rental car contained several suitcases in the back seat.  In

response to questioning by the agent, the driver indicated that although Louisiana was their

ultimate destination, they were taking the opportunity to visit a friend in Alamogordo who

worked at Holloman Air Force Base. Neither Combs nor the driver exhibited any signs of

nervousness. Agent Hearne admits that he permitted them to proceed because the itinerary and

statements given during the brief interview were believable.

Approximately five minutes later, a white vehicle driven by a black male approached the

same checkpoint. The female passenger, also black, stared straight ahead in a slouching position.

Noting that the driver demonstrated signs of nervousness, Agent Hearne's suspicions were further

aroused by the strong smell of air freshener emanating from the car during his questioning at

primary. The agent received consent from the driver to search the trunk. During this search

Agent Hearne observed that the car had Maryland license plates and a rental company decal.

Based upon suspicious attributes to the suitcases in the trunk, consent was requested to search the

luggage and the driver agreed to pull the white car to the secondary area of the checkpoint.

At secondary, neither of the occupants could provide any form of identification, but the

driver did produce a Maryland rental contract for the car. The driver stated that their destination

was Washington, D.C. and that their itinerary included going to Louisiana. Agent Hearne

instructed them to remain at secondary while he took the rental contract into the trailer for

verification. While in the trailer talking to Agent Gonzales, Hearne commented on his earlier

contact with two black males in a blue rental car who also indicated that they were on their way

to Louisiana. At this point, approximately 7:10 a.m., the white car sped off from the checkpoint.

Agents Hearne and Gonzales immediately pursued the white car in separate vehicles.

From his car, Agent Gonzales issued a BOLO ("be on the lookout") indicating that a blue,

Taurus-looking rented vehicle containing two black males might be involved with the fleeing

white car.  This information went through a series of communications among various law

enforcement agencies.  At 7:24 a.m., the Tularosa Police Department received a BOLO to hold a

car with Texas license plates containing a black couple for possible drugs.  At 7:35 a.m., Tularosa

police pulled over the car in which Defendant Combs was riding – a teal vehicle with Louisiana

plates.

    In the meantime, the white car was apprehended and the occupants placed under arrest.

Beginning at 7:25 a.m., Agent Hearne questioned and obtained a taped statement from the female

passenger, Alana Redman, at that location.  Agent Hearne testified that during this interview,

Redman indicated that she knew marijuana was involved, that the white car's true destination was

Louisiana, and that a black male in an accompanying green sedan was named "Williams."   I

concluded that the additional information as testified to by Agent Hearne would have provided

sufficient reasonable suspicion to stop the teal car.

    Yet ***none of these statements*** are contained in the transcript of the taped interview.[1]

Only one copy of the interview transcript was available at the hearing, and it was used by defense

counsel in his cross-examination of Agent Hearne.  The Court assumed, incorrectly, that all

inconsistencies between Agent Hearne's recollection of Redman's statement and the transcript of

---

[1] There is no indication that Redman made any statements to Agent Hearne other than those recorded in the taped interview.  At page twenty-seven of the transcript of the hearing, the following exchange takes place:

| | |
|---|---|
| Mr. Coronado: | When you took Alana Redman's statement , you taped her statement? |
| Agent Hearne: | Yes, sir. |
| Mr. Coronado: | So the information you described, that she provided to you, is in the taped statement? |
| Agent Hearne: | Yes, sir. |

the statement were addressed during the cross-examination.  A faxed copy of the interview

transcript and the other exhibits admitted at the hearing have since been reviewed by the Court.

Contrary to Agent Hearne's testimony, the transcript of the taped interview reflects that

during the five minutes of interrogation, Redman failed to make reference to either the name

"Williams" or to "Louisiana."  Moreover, Redman denied that she knew of any unlawful activity

and stated that there was nothing unusual about the trip.  She further stated that she was part of a

group traveling together in three cars to their homes in Washington, D.C.  She never identified

the race of her traveling companions.  It was Agent Hearne, not Redman, who suggested that

"bluish" car was involved.  Redman could not give the names of others in the accompanying cars

and knew only that a passenger's nickname was "Bee."  Thus, the only additional information

obtained  after issuance of the BOLO was the nickname "Bee" for one of the traveling

companions.  At that time, no nexus existed between the name "Bee" and the teal car.

During the return trip to the checkpoint, Agent Hearne was advised of that Tularosa

police had stopped a car based upon the initial BOLO and that Agent Gonzales was en route to

the scene.   When Agent Hearne then arrived at the Tularosa scene about 8:00 a.m., he was

informed that the driver had produced identification showing his name to be Bruce Williams.

Tularosa police had searched the car with William's consent, but nothing was discovered.  Agent

Hearne recognized both Defendant Combs and the driver from the earlier checkpoint encounter

and placed them under arrest.  In a search incident to arrest, Combs was found to have roughly

$ 1400 on his person.

As I stated at the hearing, the articulated reasons given by the government for stopping

the teal car were insufficient to support the finding of reasonable suspicion of criminal activity

required under <u>Terry v. Ohio</u>, 392 U.S. 1 (1969).   The first prong of <u>Terry</u> requires that the officers' action was ***justified at its inception***.  <u>Id.</u> at 20.   At the time of the initial stop, agents knew only that the two black American males were driving a rented car with out-of-state plates and with several suitcases in the backseat.  Their explanation of detouring to visit a friend in Alamogordo on their way to Louisiana was both plausible and consistent.  Indeed, Agent Hearne admits that he permitted them to proceed through the checkpoint because he could point to no suspicious facts.

Thus, the BOLO was issued only because both the white and teal cars were occupied by black Americans who had indicated that Louisiana was included in their travel plans.  Agent Hearne found this coincidence to be sufficiently suspicious to stop and detain the teal car for possible drugs.  Simply put, I do not.  Therefore, any evidence derived from the illegal stop of the teal car must be suppressed as tainted fruits unless an exception to the exclusionary rule applies.

The exclusionary rule puts law enforcement on notice that they will not be permitted to profit from engaging in an unlawful search or seizure, and thereby serves to deter future unlawful conduct.  But just as the government should not benefit from such conduct, the exclusionary rule should not place the government in a position worse than it would occupied absent the wrongful search or seizure.  In other words, if the unlawfully obtained evidence would ultimately have been discovered by legal means, it should not be suppressed.  <u>See</u> <u>Nix v. Williams</u>, 467 U.S. 431 (1984).  The law has established two closely related exceptions to the exclusionary rule based upon this concept – the "independent source" and "inevitable discovery" doctrines.

It is the government's burden to prove by a preponderance of the evidence that an independent investigation inevitably would have led to lawful discovery of the evidence.  <u>Id.</u> at

444.  Under Tenth Circuit law, the independent investigation need not be ongoing at the time of the illegal police conduct.  <u>United States v. Larsen</u>, 127 F.3d 984, 986 (10th Cir.1997).   The Tenth Circuit has recognized, however, "the danger of admitting unlawfully obtained evidence 'on the strength of some judge's speculation that it would have been discovered legally anyway'...." <u>United States v. Romero</u>, 692 F.2d 699, 704 (10th Cir.1982) (quoting <u>United States v. Castellana</u>, 488 F.2d 65, 68 (5th Cir.1974), rev'd on other grounds, 500 F.2d 325 (5th Cir.1974)).

I find that the government has failed to meet its burden in this case.  The transcript of the statement given by Redman still lacks sufficient additional information to have provided reasonable suspicion to stop and detain the car in which Combs was a passenger.  Thus, even if Redman's information was obtained simultaneously with or shortly after the car was pulled over, the stop of the teal car remained unjustified.  The government has failed to show that law enforcement officials would have inevitably found and lawfully stopped the car.

Wherefore,

IT IS ORDERED that Defendant Combs' Motion to Suppress Physical Evidence and Statements *(Doc. 53)* be, and hereby is, **granted**.

DATED July 17, 1998.

_____

**CHIEF UNITED STATES DISTRICT JUDGE**


Counsel for Plaintiff:          James R. W. Braun, AUSA

Counsel for Defendant Combs:          Jose R. Coronado