# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                   No. CR 98-98 LH (BB)

BRUCE PAUL WILLIAMS and
OMAR COMBS,

      Defendants.

## MEMORANDUM OPINION
## AND
## ORDER DENYING NEW TRIAL

THIS MATTER is before the Court on the motions of Defendants for new trial, and the Court having considered the briefs and oral arguments of counsel on June 17, 1999, FINDS that Defendants cannot satisfy all five conditions necessary to justify a new trial and the motions must therefore be DENIED.

## Discussion

### Facts

At approximately 7:00 a.m. on January 31, 1998, a rented Ford Contour with Louisiana plates driven by Defendant Bruce Williams entered the Border Patrol checkpoint on Highway 70 near Alamogordo, New Mexico. Defendant Omar Combs was the only passenger in the vehicle. Both occupants were questioned as to their

citizenship and destination. Both stated that they were headed to Alamogordo to visit a friend and then continue on to Louisiana. However, they were not able to provide the name or address of the friend. The Border Patrol agent nonetheless concluded he lacked sufficient evidence to hold Williams and Combs.

At approximately 7:05 a.m., a white Ford Taurus with Maryland plates driven by Defendant Dewayne Green entered the same checkpoint. Defendant Allana Redman was the only passenger in the Taurus. Just like Williams and Combs, Green and Redman claimed they were eventually headed toward Louisiana. Upon inspection of the trunk of this Taurus, Agent Hearne noticed a large black soft-sided suitcase, the contents of which felt solid. This solid substance later proved to be 250 pounds of marijuana.

At trial, Redman testified she was a college student who (1) had been traveling with Combs and Williams from Washington, DC, to see the West; (2) Redman spent several days watching television in Las Cruces area motels while Defendants disappeared; (3) the luggage containing the marijuana was purchased by Williams and Combs while in New Mexico; (4) when she found the marijuana at a Las Cruces motel she confronted Combs about the marijuana in front of Williams; and (5) Combs, in the presence of Williams, told her that the marijuana was none of her business. To corroborate Redman's testimony, the United States presented (1) a car rental agreement showing that Williams was an authorized driver of the car that was loaded

with the marijuana; (2) a motel receipt from Motel 6 on January 19, 1998, with Williams' name; (3) a motel receipt from Days Inn on January 20, 1998, with Combs' name; (4) a motel receipt from La Quinta on January 23, 1998, with Williams' name; (5) a motel receipt from Budgetel on January 26, 1998, with Redman's name and Combs' driver's license; (6) a motel receipt from Super 8 on January 30, 1998, with Redman's name; and (7) the sales tags that were still on the luggage that contained the marijuana.

In the course of discovery, defense counsel was notified that Redman would plead guilty and testify as a witness for the Government. Counsel for the Government disclosed to defense counsel Redman's written plea agreement, but no other impeachment evidence was provided.

At trial, it was the Government's theory that Redman was an innocent dupe. She was portrayed as a naive college student on break who was asked by Williams to accompany him to New Mexico for a sightseeing trip. She claimed that the first time she became aware of the true purpose of the trip (*i.e.*, to pick up a load of marijuana) was about ten days after their departure when she 'accidentally' discovered bundles of marijuana in Comb's suitcase.

Redman claimed that at this point she became 'frightened' and realized for the first time that she had been duped. She did not go to the authorities only because she was afraid of her co-Defendants. The Government called Redman's mother, Merle

Redman, as a witness. Merle Redman testified that Alana had called her collect from Las Cruces after she discovered the marijuana, and she testified her daughter sounded very frightened.

Both Williams and Combs were convicted of conspiracy to distribute and possession with the intent to distribute more than 100 kilograms of marijuana.

Approximately one month after the trial, the United States Attorney's office informed defense counsel that Pretrial Services had just reported Redman had tested positive for marijuana use on February 20, 1998, and August 14, 1998. Even though the last violation was only four days before trial, the United States Attorney's office has steadfastly maintained it had no knowledge of the violations until after the trial and there is no evidence to suggest otherwise.

## **Discussion**

### **The Legal Standard**

The Tenth Circuit Court of Appeals has set forth a specific set of criteria to be used in evaluating a motion for new trial based on newly discovered evidence. Noting such a motion "should only be granted with great caution," in *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997), the Court enumerated the following criteria to be applied:

> When a motion for a new trial is based on newly discovered evidence, the defendant is usually required to show that: (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not

caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principle issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal. (Citations omitted).

There can be little real dispute that Defendants can satisfy the first and second requirements. While both the U.S. Attorney and defense counsel argue the other side could, and indeed should, have learned of Redman's pretrial use of marijuana, it seems clear none of the counsel was aware of this fact before or during trial. Nor can the Court conclude diligent counsel would have routinely made a pretrial inquiry of United States Pretrial Services Office.

The third criteria, however, provides a serious hurdle for the defense. Defendants argue Redman was a central Government witness and the fact she was smoking marijuana in the pretrial period would impeach[1] her story that she did not know the real purpose of the trip. However, in order to be the basis for a new trial, the newly discovered evidence must be more than merely impeaching. *United States v. Trujillo*, 136 F.3d 1388 (10th Cir. 1998) (new trials are not granted for new evidence that merely impeaches a Government witness); *Lewis v. United States*, 771 F.2d 454, 457 (10th Cir. 1985); *Mitchell v. United States*, 368 U.S. 439 (1962) (per curium)

---

[1] Their briefs clearly set forth Defendants' desire to use this newly discovered evidence for impeachment. "[N]ondisclosure of Redman's drug test violations did not permit the jury to hear defense counsel impeach Redman's credibility and refute the Government's characterization of Redman ... as a 'naive college student.'" *Williams' Motion* at 3. "[The evidence] was a critical and discoverable avenue of impeachment." *Combs' Motion* at 4.

5

("[N]ew evidence which is merely cumulative or impeaching is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial.") (citations and quotation marks omitted).

The fourth criteria, that the new evidence be material to the principle issues of the trial, is in many ways the flip side of the third. While Redman's credibility was a material issue, the new evidence would not lead to her impeachment on a material fact. Showing the jury Redman smoked marijuana in the weeks before trial would necessarily be proof she was inherently unbelievable. *United States v. Lewis*, 626 F.2d 940 (D.C. Cir. 1980); *United States v. Hastings*, 577 F.2d 38 (8th Cir. 1978). *Cf. Jarrett v. United States*, 822 F.2d 1438, 1445 (7th Cir. 1987) ("witness's use of drugs is only relevant as to the ability of the witness to perceive the underlying events and testify lucidly at trial"). It would demonstrate she may have created a misimpression as to her involvement in the drug dealing. Such testimony would not prove Defendants were not involved in trafficking narcotics. It would only tend to show Redman was not a naive college student, but a voluntary participant in Defendants' illegal activities.

This brings the Court to the issue that is dispositive of Defendants' motion. In order to grant a new trial, the trial judge must be convinced it would probably produce an acquittal. Even if the jury believed Redman was a knowing co-conspirator with Defendants, it does negate her testimony that: (1) she had traveled with Combs and Williams from Washington, DC, to New Mexico staying at various motels; (2) the

luggage containing the marijuana was purchased by Williams and Combs while in New Mexico; (3) she knew Defendants had loaded the suitcase with marijuana.

Whatever impeachment value Redman's marijuana use provided, an acquittal seems unlikely since the Government also presented evidence that corroborated her testimony to wit: (1) a car rental agreement, showing that Williams was an authorized driver of the car that was loaded with the marijuana; (2) a motel receipt from Motel 6 on January 19, 1998, with Williams' name; (3) a motel receipt from Days Inn on January 20, 1998, with Combs' name; (4) a motel receipt from La Quinta on January 23, 1998, with Williams' name; (5) a motel receipt from Budgetel on January 26, 1998, with Redman's name and Combs' driver's license; (6) a motel receipt from Super 8 on January 30, 1998, with Redman's name; and (7) the sales tags that were still on the luggage that contained the marijuana. Furthermore, the United States proved that both Defendants were using false driver's licenses. Attempting to hide one's identity is evidence of consciousness of guilt. *United States v. Glass*, 128 F.3d 1398, 1408 (10th Cir. 1997). All of this evidence pointed to the guilt of Defendants, irrespective of the veracity of Redman on whether she was a "naive college student" or an insider. Indeed, if the jury believed Redman was a knowing co-conspirator, her description of Defendants' illegal activities may enhance her credibility as to such activities.

Upon reflections, then, this Court is persuaded *United States v. Seijo*, 514 F.2d 1357 (2d Cir. 1975), is not apposite. In *Seijo*, the Government's main witness was Leonard Torres who falsely testified at trial that he had never been convicted of a criminal offense. When the defendants requested such information, they were also told Torres had no criminal record. After trial, an FBI report was found in the office of the United States Attorney indicating Torres actually had a prior conviction for possession of marijuana. Then, in *Seijo*, there was a clear failure to comply with *Brady v. Maryland*, 373 U.S. 83 (1963). Furthermore, in *Seijo*, the Government witness committed perjury at trial by denying on cross-examination that he had ever had a criminal conviction, when in fact he had a prior conviction for possession of marijuana. The *Seijo* Court found that the witness' "false and conscious concealment of the prior conviction renders the uncorroborated substance of his testimony suspect." *Id.* at 1364. In the present case, Redman did not falsely and consciously perjure herself regarding her drug use; she was never questioned regarding prior drug use. Moreover, the case against Seijo was based <u>entirely</u> upon the <u>uncorroborated</u> testimony of the witness. Redman's testimony was corroborated by motel receipts, rental car receipts, and luggage tags.

*United States v. Gambino*, 835 F. Supp. 74 (E.D.N.Y. 1993), appears to be a more appropriate analog than *Seijo* for the case at bar. In *Gambino*, the defendant moved for a new trial on the basis of newly discovered impeachment evidence. The

8

court there held that "[t]he reliance by the defendant upon cases such as ... *United States v. Seijo* ... is misplaced. Those cases addressed the appropriate remedial response where principal government witness commits perjury during the course of the trial. That is not this case. The defendant here seeks this court's remedial response to impeachment material he claims the government withheld." *Id.* at 85. On appeal, Gambino's conviction was upheld despite nondisclosure of evidence that a government witness had previously counseled another individual to lie to the grand jury and was involved in a conspiracy to import and distribute heroin. *United States v. Gambino*, 59 F.3d 353 (2d Cir. 1995). The court found that, even if defense counsel had access to this impeachment, it would not have affected the outcome of the trial. *Id.* at 365.

Finally, Defendants argue strenuously the knowledge of the United States Pretrial Services should be attributed to the United States Attorney's office and, thus, their rights under *Brady* and *Giglio*[2] have been violated. While the Court is disappointed Pretrial Services did not bring this matter to the Court's attention before trial, this impeachment evidence did not relate to Defendants' guilt. *See United States v. Buchanan*, 891 F.2d 1436, 1443 (10th Cir. 1989) (impeachment evidence falls within *Brady* or *Giglio* if it relates directly to guilt). Since the Court has found the newly discovered evidence at issue did not relate to Defendants' guilt and would not likely

---

[2] *Giglio v. United States*, 405 U.S. 150 (1972).

have changed the outcome, the Court will not address the *Brady* and *Giglio* arguments further. *See United States v. Trujillo*, 136 F.3d at 1393 (failure to disclose impeachment evidence does not require automatic reversal).

## ORDER

For the above stated reasons, Defendants' motions for a new trial are **DENIED**.

Dated at Albuquerque this 8th day of July, 1999.

                                        **BRUCE D. BLACK**
                                        United States District Judge

Counsel for Plaintiff:

    Mick I.R. Gutierrez, James R.W. Braun, Assistant U.S. Attorneys, Las Cruces, NM

Counsel for Defendants:

    Peter J. Giovannini, Las Cruces, NM (Williams)
    Jose R. Coronado, Las Cruces, NM (Combs)